# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DEBORAH SUE BECKSTEDT,                     Case No. 1:13-cv-261
      Plaintiff,                           Barrett, J.
                                           Litkovitz, M.J.

    vs.

COMMISSIONER OF                            **ORDER**
SOCIAL SECURITY,
      Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 6), the Commissioner's response in opposition (Doc. 13), and plaintiff's reply memorandum (Doc. 14).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in June 2009, alleging disability since February 28, 2007, due to diabetes, depression and anxiety. These applications were denied initially and upon reconsideration. Plaintiff requested and was granted a *de novo* hearing before administrative law judge (ALJ) Larry Temin. Plaintiff appeared at the ALJ hearing with counsel, and plaintiff, her case manager, and a vocational expert (VE) testified at the ALJ hearing. On November 17, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4) (i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the

2

relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The [plaintiff] has not engaged in substantial gainful activity since February 28, 2007, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The [plaintiff] has the following severe impairments: diabetes mellitus; obesity; major depressive disorder; post-traumatic stress disorder; personality disorder (NOS); and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).  Specifically, the [plaintiff] can perform work activity except as follows:  The [plaintiff] can lift, carry, push, or pull up to 20 pounds occasionally and 10 pounds frequently.  She can stand and/or walk for 6 hours in an 8 hour workday.  She can sit 6 hours in an 8 hour workday. She can only occasionally stoop, kneel, crouch, and climb ramps or stairs.  She can never crawl, climb ladders, ropes, or scaffolds, or work at unprotected heights.  The [plaintiff] is able to perform only simple, routine, repetitive tasks. She is able to remember and carry out only short and simple instructions.  The [plaintiff] cannot work at a rapid production-rate pace.  The [plaintiff]'s job should not require more than superficial interaction with the general public, coworkers, and supervisors, or more than ordinary and routine changes in work setting or duties.

3

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1966 and was 40 years old (a "younger individual age 18-49") on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from February 28, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of

---

[1] Plaintiff's past relevant work was as a retail clerk, cashier, housekeeper, and assistant manager.  (Tr. 23).
[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform light jobs such as light packer, general factory worker, and light cleaner.  (Tr. 24).

evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D.  Specific Errors**

On appeal, plaintiff argues the ALJ erred in assessing: (1) plaintiff's ability to sustain a 40-hour work week; (2) the testimony of plaintiff's mental health case manager; (3) the weight to afford the medical opinions of record; (4) plaintiff's credibility; (5) the effect of plaintiff's diabetes on her ability to work; and (6) plaintiff's ability to perform other work at Step 5 of the sequential evaluation process. (Doc. 6).

**1.  Whether the ALJ erred in weighing the medical source and other opinions in assessing plaintiff's RFC.**

Plaintiff argues the ALJ erred by giving the most weight to the one-time consultative and non-examining state agency reviewing physicians and psychologists and less weight to plaintiff's treating physician. Plaintiff also argues the ALJ erred by not evaluating the opinions of

plaintiff's mental health case manager.  Because the weight the ALJ gave to the various medical and other opinions directly impacts the ALJ's RFC finding, whether plaintiff is able to sustain a 40-hour work week, and the effect of plaintiff's diabetes on her ability to work, the Court will consider these assignments of error together.

"The Commissioner has elected to impose certain standards on the treatment of medical source evidence."  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  "These standards, set forth in administrative regulations, describe (1) the various types of evidence that the Commissioner will consider, 20 C.F.R. § 404.1512; (2) who can provide evidence to establish an impairment, 20 C.F.R. § 404.1513; and (3) how that evidence will be evaluated, 20 C.F.R. § 404.1520b. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).  This evidence may include "medical opinions, which 'are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis,' physical and mental restrictions, and what the claimant can still do despite his or her impairments."  *Id*.  (citing 20 C.F.R. 404.1527(a)(2)).

The applicable regulations set forth three types of acceptable medical sources upon which an ALJ may rely: treating source, nontreating source, and nonexamining source.  20 C.F.R. § 416.902.  When treating sources offer opinions, the Social Security Administration is to give such opinions the most weight and is procedurally required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d at 875.  This requirement only applies to treating sources. *Id*. at 876.  "With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion

of a source who has not examined him."  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)) (internal citations omitted).

The ALJ must consider all available evidence in an individual's case record, including evidence from medical sources.  Social Security Ruling (SSR) 06-03p.[3]  The term "medical sources" refers to both "acceptable medical sources" and health care providers who are not "acceptable medical sources."  *Id.* (citing 20 C.F.R. § 404.1502 and § 416.902).  Licensed physicians and licensed or certified psychologists are "acceptable medical sources."  *Id.* (citing 20 C.F.R. § 404.1513(d)(1) and § 416.913(d)(1)).  Only "acceptable medical sources" as defined under 20 C.F.R. §§ 404.1513(a), 416.913(a) can provide evidence establishing the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight.  *Id.*

Mental health case managers are not "acceptable medical sources" and instead fall into the category of "other sources."  20 C.F.R. §§ 404.1513(d), 416.913(d)).  Information from "other sources" may be based on special knowledge of the individual and may provide insight into the severity of an individual's impairment and how it affects the individual's ability to function.  SSR 06-03p.  It may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.  SSR 06-03p.  Factors to be considered in evaluating opinions from "other

---

[3]"Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner.  20 C.F.R. § 402.35(b)(1).  In *Wilson*, 378 F.3d at 549, the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but *assumed* that they are.  [The Court] makes the same assumption in this case."  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis in original).

sources" who have seen the claimant in a professional capacity include how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. *Id.* *See also Cruse v. Comm'r of Social Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Not every factor will apply in every case. SSR 06-03p. The ALJ "should *explain* the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6 (emphasis added). With this framework in mind, the Court turns to plaintiff's arguments.

> a. *Weight to one-time consultative and non-examining state agency psychologists*

With respect to plaintiff's physical functional capacity, the ALJ gave "significant weight" to the opinions of the state agency non-examining physicians that plaintiff could perform light work. (Tr. 20). The ALJ also gave "significant weight" to the opinion of consultative examiner Jennifer Wischer Bailey, M.D., who opined that plaintiff "appears capable of performing activities commensurate with her age." (Tr. 20).

With respect to plaintiff's mental functional capacity, the ALJ gave "significant weight" to the opinion of consulting psychologist Norman Berg, Ph.D., who opined that plaintiff functioned cognitively in a moderately slow manner but that she had no difficulty understanding, remembering, and following instructions during the exam. Dr. Berg concluded that plaintiff's ability to maintain attention, concentration, persistence and pace to perform simple tasks and

multi-step tasks was not impaired, but he suggested that her psychological concerns would reduce her stress tolerance.  (Tr. 20-21).  The ALJ also gave "significant weight" to the opinions of non-examining state agency psychologists Bonnie Katz, Ph.D., and Douglas Pawlarczyk, Ph.D.  (Tr. 21).  Dr. Katz opined that plaintiff's ability to understand and remember short and simple instructions, carry out short and simple instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, make simple work-related decisions, and interact appropriately with others was not significantly limited.  Dr. Katz opined that plaintiff's ability to perform activities within a schedule, maintain regular and punctual attendance, complete a normal workday and work week without interruptions from psychologically-based symptoms, perform at a consistent pace, and respond appropriately to changes in the work setting was moderately limited.  Dr. Pawlarczyk agreed with Dr. Katz's assessment.

In contrast to these opinions, the ALJ gave "little weight" to the opinions of plaintiff's treating family physician, Rasheed Ghani, M.D.  (Tr. 22-23).  Dr. Ghani opined that plaintiff could lift only 2½ pounds occasionally and stand only 1 hour at a time or 5 hours total in an 8 hour workday due to weakness caused by diabetes, and he also suggested some postural and environmental limitations and limits on pushing and pulling.  Dr. Ghani also noted that plaintiff was "unable to function" because she was suicidal after stopping her medications.  (Tr. 22).

The opinion of a non-treating but examining source is entitled to less weight than the opinion of a treating source, but is generally entitled to more weight than the opinion of a source who has not examined the claimant.  *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010).  *See also Smith,* 482 F.3d at 875.  When deciding the weight to give a non-treating

source's opinion, the ALJ should consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. *Ealy,* 594 F.3d at 514 (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).  Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources.  20 C.F.R. §§ 404.927(c)(3), 416.927(c)(3).

Plaintiff argues the ALJ applied a more rigorous standard of review when weighing the treating doctor's opinions than when weighing the opinions of the consultative and non-examining psychologists because the ALJ failed to note "material inconsistencies" among the psychologists' opinions.  (Doc. 6 at 5-6).  Plaintiff asserts the ALJ failed to note the material differences between Dr. Katz's January 2010 review of the file and Dr. Berg's assessment of plaintiff's functioning.  Plaintiff notes that Dr. Berg diagnosed depression in partial remission, while Dr. Katz found additional diagnoses of PTSD and personality disorder.  (Doc. 6 at 8).  Dr. Katz opined that plaintiff had moderate limitations in persistence and pace  and in her ability to deal with stress, while Dr. Berg assessed a mild impairment in these areas.  (Doc. 6 at 5).  Dr. Berg estimated average intelligence, while IQ testing showed she functioned in the borderline range of intelligence.  (Compare Tr. 752 with Tr. 847).  Dr. Katz also opined that plaintiff's statements about her limitations were credible, which if credited would establish plaintiff's inability to sustain a 40 hour work week.  (Doc. 6 at 6).

10

The fact that the opinions of Drs. Berg and Katz are not identical does not make them materially inconsistent for purposes of assessing plaintiff's RFC.  Dr. Katz's opinion of greater restrictions was rendered after Dr. Berg performed his examination and after Dr. Katz considered not only Dr. Berg's report, but also all of the other medical evidence in the record up to that point.  Dr. Katz acknowledged Dr. Berg's opinion but determined that the treating doctor's opinions and other evidence suggested moderate rather than mild impairment of functioning. (Tr. 851).  Whether plaintiff has mild or moderate limitations of function is a question of degree on which the medical sources may offer opinions, but the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner.  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 578 (6th Cir. 2009)).  *See also* 20 C.F.R. §§ 404.1546(c), 416.946(c) (the responsibility for assessing a claimant's RFC lies with the ALJ).  An ALJ is not required to adopt precise limitations offered by a single medical source in assessing a claimant's RFC.  The ALJ here was entitled to adopt the more restrictive functional limitations assessed by Dr. Katz over the less restrictive limitations imposed by Dr. Berg, and plaintiff does not explain how she was harmed by the ALJ's decision to incorporate the more restrictive mental limitations into the RFC.  The Court finds no merit to this argument.

Nevertheless, the Court agrees with plaintiff's arguments that the ALJ erred by not crediting or weighing the opinions of plaintiff's case manager and by giving "significant weight" to the opinions of the state agency psychologists when their reviews did not include any of the medical or other evidence submitted after June 2010.

Records show that plaintiff's functioning deteriorated between the time she saw Dr. Berg

in December 2009 and the dates the state agency reviewers rendered their opinions.  These include plaintiff's six-day hospital admission in September 2010 for severe depression with suicidal ideation (Tr. 894-944); the Central Community Health Board records from August 2010 to December 2010 showing plaintiff lost her externship[4] due to her suicide attempt, lost the ability to care for her son who was now living with plaintiff's mother, and was homeless (Tr. 946-953); and the records from the Greater Cincinnati Behavioral Health Services (GCB) from March 2011 through August 2011 (Tr. 978-1057).  The GCB records show that after six months of homelessness, plaintiff moved to Tender Mercies, a residence for homeless adults with mental illness.[5]  (Tr. 1016).  Mr. Hitzeroth, a qualified mental health specialist (QMHS)[6] who was employed by GCB and maintained his office at Tender Mercies, was plaintiff's case manager.[7]  Mr. Hitzeroth testified he saw plaintiff nearly every day and specifically interacted with her at least two to four times per week over the six months plaintiff had been living at Tender Mercies.  He testified that plaintiff had poor motivation and memory problems and had to be reminded to go to appointments.  He also testified that she consistently experienced serious bouts of depression for one to two weeks every one to two months during which she would isolate in her room and he would "have to literally go up to her room and prompt her to . . . get up and come

---

[4] Plaintiff had been going to school to become a medical assistant.  (Tr. 896).

[5] *See* http://www.tendermerciesinc.org/about-our-mission.

[6] The Ohio Administrative Code defines "Qualified mental health specialist" (QMHS) as "an individual who has received training for or education in mental health competencies and who has demonstrated, prior to or within ninety days of hire, competencies in basic mental health skills along with competencies established by the agency, and who is not otherwise designated as a provider or supervisor, and who is not required to perform duties covered under the scope of practice according to Ohio professional licensure. . . ."  *See* Ohio Admin. Code 5122-24-01 (Sept. 7, 2011).

[7] Mr. Hitzeroth testified that "care manager" was the new title for "case manager."  The Sixth Circuit has recognized that "many unemployed disability applicants receive treatment at clinics that render care to low income patients by providing mental health treatment through such counselors.  The practical realities of treatment for those seeking disability benefits underscores the importance of addressing the opinion of a mental health counselor as a valid 'other source' providing ongoing care."  *Cole v. Astrue*, 661 F.3d 931, 939 n.4 (6th Cir. 2011).

out and interact with people." (Tr. 69).  Mr. Hitzeroth testified that he observed these bouts of

depression four or five times during the six months that plaintiff had been living at Tender

Mercies.  *Id.*  He also testified that plaintiff had a lot of conflict with other residents and staff.

(Tr. 71).  He opined that she was "pretty compliant" with taking her medications.  (Tr. 72).  He

did not believe that plaintiff was capable of functioning independently in the community at that

time.  (Tr. 72-73).  His case management notes consistently reflect that plaintiff was very

disorganized and confused, had trouble maintaining a schedule and following directions, and had

memory problems and poor follow through with appointments.  (Tr. 979, 980, 981, 982, 983,

984, 985, 989, 991, 992, 993, 994, 995, 996. 997, 998, 999, 1000, 1001, 1002, 1003, 1004, 1005,

1006, 1007, 1008, 1009, 1010, 1011, 1013, 1014, 1015).  In conjunction with the case

management services plaintiff received at Tender Mercies, she also was treated by Dr. Scales, a

GCB psychiatrist.  When plaintiff was initially assessed in March 2011, she was diagnosed with

a major depressive disorder, recurrent, and PTSD, chronic, with a GAF of 25.[8]  On mental status

---

[8] The "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning."  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006).  A GAF score represents "the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 32 (4th ed., text rev. 2000).  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning."  *Id.*  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  *Id.* at 34.  The DSM–IV categorizes individuals with GAF scores of 21 to 30 as having behavior that is "considerably influenced by delusions or hallucinations *or* serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) *or* inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)" and scores of 31 to 40 as having "some impairment in reality testing, or impairment in speech and communication, or serious impairment in several of the following: occupational or school functioning, interpersonal relationships, judgment, thinking or mood.  *Id.* at 32.  A score of 41 to 50 is indicative of "serious symptoms or serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Diagnostic and Statistical Manual of Mental Disorders*, p. 34 (4th ed. 2000).  A GAF score of 51-60 is indicative of "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *Id.*  A GAF score of 61 to 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia)" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well."  *Id.*

examination, she presented with a depressed mood and congruent affect with ongoing crying. She was positive for suicidal ideation without any concrete plan.  (Tr. 1047-1056).  Dr. Scales' treatment records document the fluctuating nature of the severity of plaintiff's major depression, with GAF scores of 45, 52, and 47.  (Tr. 1018-1029).

While the ALJ's decision acknowledges Mr. Hitzeroth's testimony that plaintiff had poor motivation and memory, that she needed to be reminded about appointments, that she consistently gets depressed for one or two weeks every month or two, and that she was fairly compliant with treatment, the ALJ never specified whether he credited these observations or granted them any weight.  (Tr.21).  Mr. Hitzeroth's observations and opinions on plaintiff's functioning conflict with the opinions of the one-time consultative examiner and the non-examining state agency physicians which the ALJ gave "significant weight."   Mr. Hitzeroth's testimony and progress notes, along with the records of plaintiff's September 2010 hospitalization for suicidal ideation, the Central Community Health Board records, and Dr. Scales' treatment records, suggest greater limitations in functioning than those found by the one-time and non-examining psychologists and indicate that plaintiff may not be able to sustain a 40-hour workweek.  *See* SSR 96-8p.  Contrary to SSR 96-8p, the ALJ did not consider the length of time Mr. Hitzeroth has known plaintiff or the frequency of his observations and interactions with plaintiff at Tender Mercies, which provide insight into the severity of plaintiff's mental impairment and how it affects her ability to function.  Nor did the ALJ assess how consistent Mr. Hitzeroth's opinion was with the other evidence, particularly the evidence submitted after June 2010 which showed a decline in plaintiff's mental functioning since the time she was examined by Dr. Berg.  SSR 06-03p*; see also Cruse,* 502 F.3d at 541.  The ALJ's failure to weigh and

assess the credibility of Mr. Hitzeroth's testimony and to evaluate his progress notes in the written decision does not comply with the applicable Social Security Rulings and regulations and deprives this Court of a meaningful basis for judicial review. SSR 06-03p provides that ALJs "should *explain* the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p (emphasis added). Without this analysis, the Court is unable to meaningfully review the ALJ's decision giving "significant weight" to the opinions of the one-time and non-examining psychologists in this case. *See Hurst v. Sec'y of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (the ALJ's articulation of reasons "for crediting or rejecting particular sources of evidence . . . is absolutely essential for meaningful appellate review.").

In addition, the ALJ erred by giving the most weight to the opinions of the non-examining state agency psychologists without acknowledging that they did not have a significant portion of the medical and other records in this case when they rendered their opinions. One of the factors the ALJ must consider in weighing medical opinions is "the extent to which an acceptable medical source is familiar with the other information in [the] case record." 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). A state agency reviewing doctor's opinion may be entitled to greater weight than that of a treating or examining doctor in certain circumstances, such as when the "State agency medical . . . consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source." *Blakley*, 581 F.3d at 409 (quoting SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). However, where a non-examining source has not reviewed a

significant portion of the record and the ALJ fails to indicate that he has "at least considered [that] fact before giving greater weight" to the reviewing doctor's opinion, the ALJ's decision cannot stand. *Blakley*, 581 F.3d at 409 (internal quotation omitted). In this case, the later-generated treatment notes and Mr. Hitzeroth's observations and opinions contain a more detailed picture of plaintiff's functionality than any other record evidence and indicate a deterioration in plaintiff's functioning that was not considered by the non-examining psychologists.

More importantly, these records indicate that plaintiff still had significant limitations in her mental functioning despite compliance with her medication regimen. The ALJ noted several instances of plaintiff's noncompliance with medication in 2008 and 2009 and concluded that she "only experienced more severe psychological symptoms when she failed to comply with treatment and that her symptoms improved dramatically when she resumed taking her medications." (Tr. 22). There is some evidence to support the ALJ's finding for the 2008 to 2009 period.[9] However, there is no evidence that plaintiff's September 2010 hospitalization for suicidal ideation resulted from noncompliance with medication or that she was noncompliant when treated by Dr. Scales and Mr. Hitzeroth through GCB. The state agency psychologists did not review this evidence prior to proffering their opinions, making their opinions incomplete. For these reasons, the ALJ erred in giving "significant weight" to the opinions of Drs. Katz and

---

[9] The ALJ's decision notes that plaintiff was hospitalized once in 2008 and once in 2009 for suicidal ideation. (Tr. 22). The records show that on each occasion, plaintiff had not been taking her psychiatric medications prior to her admission. (Tr. 830, 785). The ALJ also cites to a note from Dr. Bort, plaintiff's family physician prior to Dr. Ghani, who "noted noncompliance with medical treatment 'is the reason for most of her issues' (Exhibit 1F/222)." (Tr. 22). This note does not support the ALJ's conclusion that plaintiff experienced more severe psychological symptoms when she failed to comply with treatment. (Tr. 22). This note is taken out of context by the ALJ. Dr. Bort's note actually references plaintiff's lack of control over her weight and diet, and stresses that plaintiff should "NOT drink soda pop." (Tr. 513). The note concerns plaintiff's need to gain better control over her blood sugar levels given her diabetes and does not imply that plaintiff was noncompliant with her psychiatric medications at that time. To the contrary, the progress note from that date states plaintiff "[s]eems to be doing a bit better" with her depression disorder and says nothing about noncompliance with medication. *Id.*

16

Pawlarczyk because of the significant amount of evidence discussed above that was not in the record at the time of their reviews.

      *b. Weight to the opinions of treating physician Dr. Ghani*

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include

the length, nature and extent of the treatment relationship and the frequency of examination.  20

C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.  In addition, the

ALJ must consider the medical specialty of the source, how well-supported by evidence the

opinion is, how consistent the opinion is with the record as a whole, and other factors which tend

to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6);

*Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

     "Importantly, the Commissioner imposes on its decision makers a clear duty to 'always

give good reasons in [the] notice of determination or decision for the weight [given a] treating

source's opinion.'"  *Cole*, 661 F.3d at 937 (citation omitted).  *See also Wilson*, 378 F.3d at 544

(ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion).

Those reasons must be "supported by the evidence in the case record, and must be sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight."  *Cole*, 661 F.3d at 937 (citing SSR 96-

2p, 1996 WL 374188 (1996)).  This procedural requirement "ensures that the ALJ applies the

treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

     Plaintiff's treating family physician, Dr. Ghani, submitted Questionnaires dated August

25, 2009 (Tr. 684-686) and May 5, 2010 (Tr. 711-713), and a Medical Assessment of Ability to

do Work-Related Activities (Physical) dated June 8, 2011.  (Tr. 955-57).  In August 2009, Dr.

Ghani reported plaintiff's diagnoses as major depression, suicidal, personality disorder, and

uncontrolled diabetes.  He opined that plaintiff was depressed, could not sleep, and had suicidal

thoughts.  He reported that plaintiff "cannot concentrate" and that she "fails to show at work and

doctor's office appointments." (Tr. 685). He reported she was withdrawn and "totally unable to tolerate stress." (Tr. 686). He also reported she had no resources to buy medications. (Tr. 686). In May 2010, Dr. Ghani reported plaintiff had severe depression and was suicidal. He also reported that she had no money to buy medications so her diabetes was usually uncontrolled and her depression was severe. He stated that "when she has money she buys medications otherwise diabetes and depression uncontrolled." (Tr. 713). In June 2011, he reported that plaintiff had weakness due to diabetes and could lift only 2½ pounds occasionally and stand only 1 hour at a time or 5 hours total in an 8 hour workday. He also opined that plaintiff was "unable to function suicidal." (Tr. 956). The ALJ gave "little weight" to the opinions of Dr. Ghani. (Tr. 22-23).

Plaintiff argues the ALJ erred in weighing Dr. Ghani's opinions. First, plaintiff states "the ALJ mentioned that some of [Dr. Ghani's] records were illegible" (Doc. 6 at 8, citing Tr. 20) and suggests that if the ALJ could not read Dr. Ghani's treatment notes he did not have a basis to discount his opinion. Contrary to plaintiff's argument, the ALJ did not discount Dr. Ghani's opinion on this basis. Rather, the ALJ gave reduced weight to Dr. Ghani's opinions because "his treatment notes are not particularly informative, contain no thorough physical or mental examination, and contain no objective support for his opinion." (Tr. 22). Notably, even if the ALJ had discounted Dr. Ghani's opinion on the basis of illegibility, it is plaintiff's burden to put forth evidence establishing disability. *See Rabbers,* 582 F.3d at 652; *Wilson,* 378 F.3d at 548. The fact that a treating physician's notes may be largely illegible does not relieve plaintiff of this burden, nor does it require the Commissioner to accept plaintiff's word in lieu of objective, clinical, or opinion evidence. Where the ALJ provides an otherwise substantially supported basis for discounting opinion evidence, such as lack of support, the illegibility of

19

portions of treatment records does not warrant reversal.  *See Anderson v. Astrue,* No. 11-cv-15636, 2012 WL 4867703, at *13 (E.D. Mich. Sept. 18, 2012).  *See also Amer v. Comm'r of Soc. Sec.*, No. 1:13-cv-282, 2014 WL 1338115, at *8 (S.D. Ohio Apr. 2, 2014) (report and recommendation), *adopted,* 2014 WL 1670082 (S.D. Ohio Apr. 24, 2014).  In any event, the ALJ's finding is supported by Dr. Ghani's subsequent progress notes, which do not contain objective or clinical findings to support his opinions.  (Tr. 966-977).  Plaintiff's argument is therefore not well-taken.

Plaintiff also alleges the ALJ failed to apply the factors set forth in § 404.1527(c) in weighing Dr. Ghani's opinions.  (Doc. 6 at 8).  Plaintiff contends that although Dr. Ghani is not a psychiatrist or endocrinologist, he "is trained in mental health issues and diabetes," he prescribes medications for these conditions, and he is qualified to report his observations of plaintiff.  (Doc. 6 at 9).  Plaintiff's argument is without merit.  The ALJ recognized that Dr. Ghani was a treating source who had treated plaintiff since February 2008 (Tr. 22), *see* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i), and properly considered that Dr. Ghani was not a specialist, but a general practitioner (Tr. 23), *see* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).  The ALJ properly considered these regulatory factors in assessing Dr. Ghani's opinions.

Plaintiff also argues the ALJ failed to give good reasons for discounting the treating physician's opinion when the ALJ stated that Dr. Ghani did not address plaintiff's failure to comply with treatment.  (Doc. 6 at 9).  Plaintiff alleges that Dr. Ghani was familiar with plaintiff's noncompliance with treatment, but noted in his report that she had "no resources to buy medications."  (Tr. 686, 713).  However, plaintiff testified that she had possessed a medical card since 2006, implying that she had medical insurance to cover the cost of medications.  (Tr.

39, 53-54).  The ALJ reasonably resolved this conflict in the evidence and considered this factor in assessing the weight to afford Dr. Ghani's opinions.  Plaintiff has put forth no compelling reasons for disturbing the ALJ's findings in this regard.

   **2. Whether the ALJ erred at Step 5 of the sequential evaluation process.**

   At Step 5 of the sequential evaluation process – the availability of suitable work for a claimant – the ALJ may rely upon the testimony of a vocational expert.  Such testimony can constitute substantial evidence, but it "must be given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant respects." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  Where the hypothetical question posed by the ALJ fails to accurately portray the plaintiff's limitations and RFC, the ALJ errs by relying on the VE's answer to the hypothetical.  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009).

   Plaintiff argues the ALJ erred by finding plaintiff had moderate limitations in persistence and pace but failing to include these in his mental RFC or in his hypothetical question to the vocational expert.  (Doc. 6 at 6).  Contrary to plaintiff's argument, both the ALJ's RFC and hypothetical question accommodated these limitations by precluding work at a rapid production-rate pace.  (Tr. 20, 81).  *See Starr v. Comm'r of Soc. Sec.*, No. 2:12-cv-290, 2013 WL 653280, at *3 (S.D. Ohio Feb. 21, 2013) (limiting claimant to performing tasks in an environment without fast-paced production demands accounted for limits in persistence and pace); *Black v. Comm'r of Soc. Sec.*, No. 5:11-cv-2770, 2012 WL 4506018, at *14 (N.D. Ohio Sept. 28, 2010) (hypothetical question accounts for moderate limitations in concentration, persistence, or pace when it limits claimant to "simple, routine, and repetitive tasks performed in a work environment free of fast

21

paced production requirements, involving only simple, work-related decisions, and routine workplace changes").

Plaintiff also argues the ALJ erred when he omitted from his hypothetical question to the VE several additional limitations, including the number of days plaintiff would miss from work, her problems with focus and concentration, her serious bouts of depression lasting one to two weeks, and her reliability issues.  (Doc. 6 at 14).  Whether the ALJ erred by not accounting for these specific limitations cited by plaintiff depends on the extent to which they are supported by the medical and other record evidence.  As this matter should be remanded for further proceedings based on the ALJ's weighing of the opinion evidence and for a new RFC finding, the VE's testimony based on the ALJ's hypothetical is insufficient to carry the Commissioner's burden at Step 5.  This is an issue that should be re-addressed on remand.

**3. The Court need not address plaintiff's credibility argument.**

Plaintiff alleges as her fourth assignment of error that the ALJ erred in assessing her credibility.  (Doc. 6 at 10).  It is not necessary to address plaintiff's credibility argument because on remand the ALJ's reconsideration of the medical and opinion evidence in this matter and plaintiff's RFC may impact the remainder of the sequential evaluation process, including the ALJ's assessment of plaintiff's credibility.  *See Trent v. Astrue,* No. 1:09cv2680, 2011 WL 841538, at *7 (N.D. Ohio Mar. 8, 2011).  In any event, even if plaintiff's fourth assignment of error had merit, the result would be the same, *i.e.,* a remand for further proceedings and not an outright reversal for benefits.  The Court therefore declines to address plaintiff's fourth assignment of error.

**III. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher v. Sec'y of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994). This matter is reversed and remanded for further proceedings with instructions to the ALJ to re-weigh the medical and other opinion evidence in accordance with this decision; to reconsider plaintiff's credibility and RFC; and for further medical and vocational development as warranted.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date:  1/16/2015                    s/Karen L. Litkovitz
                                    Karen L. Litkovitz
                                    United States Magistrate Judge

23

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DEBORAH SUE BECKSTEDT,              Case No. 1:13-cv-261
       Plaintiff,

                                      Barrett, J.
                                      Litkovitz, M.J.
       vs.

COMMISSIONER OF
SOCIAL SECURITY,
       Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

24